UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRELL WENDRICKS,

        Plaintiff,

             Case No. 20-cv-1189-pp

 v.

ANNA SERRES, RODNEY REETZ,
ALEXANDER CARLSON,
LUCY ELFMAN, and AARON WALKER,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT**

   Plaintiff Terrell Wendricks, a detainee at the Brown County Jail who is representing himself, filed a complaint alleging that the defendants violated his civil rights under 42 U.S.C. §1983 by using excessive force when responding to a 911 call. Dkt. No. 1. The plaintiff has also filed a motion to proceed without prepaying the filing fee. Dkt. No. 2. This order resolves the motion and screens the complaint.

**I. Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)**

   The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the

1

plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 5, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $37.30 by August 26, 2020. Dkt. No. 5. On August 20, 2020, the court received that fee. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the Prison Litigation Reform Act, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

2

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     Allegations in the Complaint

The plaintiff alleges that on August 2, 2018, defendants Rodney Reetz, Lucy Elfman, Anna Serres, Alexander Carlson and Aaron Walker—all officers with the Green Bay Police Department—arrived at an apartment complex at 2790 Humbolt Road in Green Bay, Wisconsin in response to a 911 call. Dkt. No. 1 at 6, 8. The plaintiff states that the defendants entered the apartment complex with "full knowledge that [the plaintiff] was bleeding severely." Id. at 8.

3

The plaintiff says that instead of providing medical attention, the officers "took matters into their own hands," and used "their badge and their prejudice as excuses to use vicious and hellacious force" against him. Id. He alleges that defendant Anna Serres used all the probes in her taser o him, then knelt on his upper back and neck area and "began drive stunning him on his back." Id.

The plaintiff alleges that at the same time, defendant Alexander Carlson "fir[ed] his two sets of probes" into the plaintiff and began kicking "as hard as he could at [the plaintiff's] thigh, hip, and abdomen areas." Id. The plaintiff says that "after growing tired," Carlson "began drive stunning" the plaintiff on his legs and buttocks. Id. The plaintiff claims that defendant Aaron Walker "unloaded heavy baton and relentless knee strikes" to the plaintiff's body and used his baton to put the plaintiff's right arm "into a C-lock." Id. He asserts that defendant Lucy Elfman "fired one set of probes" into the plaintiff and began striking him with her baton. Id. The plaintiff alleges that defendant Rodney Reetz arrived and sprayed the plaintiff in the face with OC spray, then placed the plaintiff "in an arm bar, which is a mixed martial arts submission move." Id. The plaintiff alleges that all these actions happened "in sync with one another." Id.

The plaintiff alleges that the defendants' tasers "were used so many times, they had to be turned into their shift commander." Id. He says that "one taser reads to have been activated for six minutes." Id. The plaintiff alleges he was "medically evacuated" in an ambulance, injected with drugs, received stitches and x-rays. Id. at 7. He says he was covered in abrasions and cuts,

4

and he has scars on his right foot, right wrist and arm. Id. He asserts that he has lost mobility and flexibility in his right shoulder when compared to his left. Id. He also states he sustained psychological trauma and that he gets "terrified if [he is] around more than one police officer and [his] anxiety skyrockets in a fear for [his] own safety." Id.

The plaintiff asks for $1.5 million dollars for pain and suffering, and asks that the court terminate the defendants from the police force and ban them from working in law enforcement. Id.

C.   Analysis

While the plaintiff does not say so, the court infers from context that these events occurred while the defendants were trying to take the plaintiff into custody. Courts "analyze excessive force claims under the Fourth Amendment's 'reasonableness' standard." Becker v. Elfreich, 821 F.3d 920, 925 (7th Cir. 2016). "'A court determines whether an officer has used excessive force in effectuating an arrest based on a standard of objective reasonableness.'" Id. (quoting Payne v. Pauley, 337 F.3d 767, 778 (7th Cir. 2003) (internal quotations and citations omitted)). "'A police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" Id. (quoting Payne, 337 F.3d at 778 (internal quotations and citations omitted)).

The plaintiff has stated sufficient facts to allow him to proceed on a Fourth Amendment excessive force claim against all the defendants. He states

that he was already bleeding severely when the officers arrived, suggesting he was incapacitated. The plaintiff implies that the officers used their tasers and batons on him for no reason, at a time when he was unable to do anything. That is enough to state a claim for excessive force. See Lewis v. Downey, 581 F.3d 467, 478 (7th Cir. 2009) (finding that using a taser against a plaintiff who was lying quietly on a bed is excessive force).

The plaintiff also implies that the officers were unreasonable in responding to his medical needs. The plaintiff alleges that he was a pretrial detainee when these events occurred, dkt. no. 1 at 6, and "the controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps. The first step, which focuses on the intentionality of the individual defendant's conduct, . . . 'asks whether the [] defendant acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of handling'" the plaintiff's case. McCann v. Ogle Cty., Ill., 909 F.3d 881, 886 (7th Cir. 2018) (quoting Miranda v. Cty. of Lake, 900 F.3d 335, 353 (7th Cir. 2018)). For the second step, the court must "ask whether the challenged conduct was objectively unreasonable." Id. "This standard requires the court to focus on the totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge—objectively—without any regard to any subjective belief held by the individual—whether the response was reasonable." Id. The plaintiff alleges that the defendants knew he was seriously bleeding and implies he was incapacitated. Dkt. No. 1 at 8. If the defendants were aware of his medical need but ignored it

6

(and used excessive force, to boot), their behavior would have been objectively unreasonable. The court will allow the plaintiff to proceed on a Fourteenth Amendment claim against all the defendants.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Anna Serres, Rodney Reetz, Alexander Carlson, Lucy Elfman and Aaron Walker under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee. The court **ORDERS** those defendants to file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$312.70** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the

7

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Stephen C. Dries for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and for filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 2nd day of November, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**

9

Case 2:20-cv-01189-PP-SCD   Filed 11/02/20   Page 9 of 9   Document 8