UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Terrell Wendricks,

      Plaintiff,

      vs.                                          Case No.: 20-CV-1189

Anna Serres, Rodney Reetz,
Alexander Carlson, Lucy
Elfman and Aaron Walker,

      Defendants.

---

### DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THIER MOTION FOR SUMMARY JUDGMENT

---

Defendants Anna Serres, Rodney Reetz, Alexander Carlson, Lucy Elfman and Aaron Walker, by their attorneys, Gunta Law Offices, S.C., submit the following Reply Memorandum in Support of their Motion for Summary Judgment.

### INTRODUCTION

Plaintiff's Summary Judgment Response is completely void of record citations, lacks relevant legal authority, relies on a litany of conclusory statements, and is wholly insufficient to defeat Defendants' Motion and request for dismissal of all of Plaintiff's claims. Plaintiff has utilized inadmissible or nonexistent "evidence" to support his Response. Under the undisputed and material facts of this case and relevant caselaw, all Fourth and Fourteenth Amendment claims against the Defendants must be dismissed on the merits and under the doctrine of qualified immunity.

1

**DISCUSSION**

I. **Plaintiff Failed to Raise a Genuine Dispute of Material Fact Regarding Any Constitutional Claim.**

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). However, this does not extend to drawing inferences that are supported by only speculation or conjecture. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Thus, even if Plaintiff disputes some of the facts the Defendant Officers provided to support their motion for summary judgment, the mere existence of an alleged factual dispute is not sufficient to defeat a summary judgment motion. *See Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 973 (7th Cir. 2000). In other words, Plaintiff can only successfully defeat Defendants' summary judgment motion if he presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). Plaintiff has failed to do so.

A. **Plaintiff Failed to Respond to Defendants' Request for Admissions.**

Plaintiff incorrectly argues that Judge Pepper's Scheduling Order modified his responsibility to respond to Defendants' Request for Admissions. (Dkt. 41, p. 1) The Order provides the following:

> Parties must serve their discovery requests by a date sufficiently early so that discovery is completed no later than June 1, 2021 (that means that the parties must serve their requests at least sixty days before the deadline to allow the opposing party sufficient time under the rules to respond by the deadline).

*See* (Dkt. 23, p. 1). This language in no way circumvents Plaintiff's obligation to respond to Requests for Admissions under Rule 36(a) of the Federal Rules of Civil Procedure. As such, all facts stated in Defendants' Requests for Admissions are deemed admitted. Fed.R.Civ.P. 36(a)(3).

2

### B. Plaintiff's Declaration is Insufficient to Create a Genuine Dispute of Material Fact.

Plaintiff filed a "Declaration Response" to Defendants' Summary Judgment Pleadings. *See* (Dkt. 43) In doing so, Plaintiff—three years after the incident—makes blanket denials of the information contained in the Officers' reports, which were created within days of the incident. Even more confusing is that Plaintiff relies heavily on those reports to support his claims, even though the reports contradict statements contained in his Declaration. *See generally* (Dkt. 41-1, Response to Interrogatory No. 3). Plaintiff's Declaration contains no citation to evidentiary support in violation of Fed. R. Civ. P. 56 (C)(1),(4), and is merely a litany of conclusory statements and speculation wholly insufficient to create a genuine dispute of material fact regarding any of his constitutional claims.

#### 1. Plaintiff's dangerous behavior is undisputed.

Although Plaintiff admits to being under the effects of LSD or acid (DPFF 72, 89: Admission no. 11), a theme throughout his Response is that his concerning behavior and actions were due to a medical emergency. *See* (DPFF 22, Pltfs Resp). Plaintiff essentially concedes that he was suffering from "excited delirium" (DPFF 28, 30, 35, 82, Pltfs Resp; *see also* Dkt. 42, PPFF 31) and cites to Green Bay Police Department Policy 300.6 "Medical Considerations" (Dkt. 41-1, pp. 64 of 80) to claim that the Officers should have treated him as if he was suffering a medical emergency. The policy characterizes "excited delirium" as:

> Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics and imperviousness to pain or who require a protracted physical encounter with multiple officers to be brought under control [....]

*See Id*. This is exactly the type of behavior that Plaintiff exhibited during his interactions with Officers on August 2, 2018. (DPFF 28, 30, 59; Pltfs Resp) For example, Plaintiff's behavior of

3

ceasing all movement and then exaggerated movements are considered Early Warning Signs by the Wisconsin Defense and Arrest Tactics (DAAT) manual, which officers are trained to associate with a high level of danger to officers. (DPFF 30; Pltfs Resp)

### 2. Plaintiff cannot genuinely dispute the Officers' perception that he was violent, non-compliant, and thus, posed a safety threat.

Even by Plaintiff's account, the scene the Officers encountered was chaotic. Prior to their arrival on scene, Dispatch informed the Officers that a female was being attacked by a male in apartment 3 and the female was hearing screaming "Don't kill me." (DPFF 10) When they arrived at the apartment complex, a man with a sword ran up to them and stated, "He's up there," referring to Wendricks, who was the only remaining male in apartment 3. (DPFF13) As Officers entered the apartment complex, they observed blood smeared on the walls and on the door leading into apartment 3. (DPFF 17) Upon entering apartment 3, the Officers observed a disheveled apartment, blood smeared on the walls, and then encountered Wendricks, who was naked from the waist down and exhibiting concerning behavior. (DPFF 19) The Officers were aware that a violent attack had occurred but had no way of knowing where the blood came from, including possibly the female victim. (DPFF 10) As the Officers attempted to determine what was going on, Plaintiff's behavior escalated and became dangerous. He continued to exhibit signs of excited delirium, which the Officers associated with a heightened risk of danger. (DPFF 59) Whether because of LSD, excited delirium, or Plaintiff simply not wanting to be arrested, the record clearly supports the Officers' belief that Plaintiff posed a risk to their safety.

Plaintiff claims that he did not try to grab or disarm Officer Serres and generally that he was not violent, or a threat to the Officers. (Dkt. 43 p. 1) However, Plaintiff's subjective intent regarding his actions is insufficient to negate how the Officers on scene perceived his actions. (DPFF 30, 32-33; Pltfs Resp). Plaintiff also claims that he complied with Officers' commands by

4

"crawling on his knees towards the door officers were standing in front of." (Dkt. 43, p. 1) The Officers never instructed Plaintiff to crawl towards the door, further demonstrating that he was not complying with Officers' commands. *See* (Dkt. 32-1, 33-1, 34-1, 36-1, 37-1).

Plaintiff conveniently does not recall making bizarre statements to Officers Serres and Elfman (DPFF 28; Pltfs Resp), yet somehow recalls that he was not a threat to anyone and was at most "passively resistant." *See* (DPFF 41; Pltfs Resp) Plaintiff's "less than definitive knowledge does not cast sufficient doubt on what the officer reasonably believed at the time." *Forrest v. Prine*, 620 F.3d 739, 747 (7th Cir. 2010).

The undisputed facts demonstrate that Plaintiff did not comply with the Officers' commands, and he resisted their attempts to secure him in handcuffs:

> When City of Green Bay Police Officers attempted to take [Wendricks] into custody [Wendricks] actively resisted their attempts. (DPFF 89: Admission no. 11)
>
> Officer Carlson ordered Wendricks to "stop resisting" and to put his arms behind his back. Wendricks continued to resist. (DPFF 41; Pltfs Resp)
>
> Based on Wendricks' continued high levels of strength and resistance to numerous Officers' attempts to place him in handcuffs, Officer Walker believed that Wendricks was suffering from excited delirium onset due to some form of drug use. (DPFF 59; Pltfs Resp)
>
> The Officers grew exhausted due to Wendricks continued to resist and none of the Officers' force was effective in gaining compliance from him. (DPFF 60; Pltfs Resp)
>
> Wendricks continued to resist and none of the force used was working, Officer Carlson requested additional units to respond quickly. (DPFF 63; Pltfs Resp)
>
> *See also* (DPFF 34, 42-45, 49, 51, 53-57, 61-62)

### 3. Plaintiff cannot genuinely dispute the Officers' observations and their lack of knowledge regarding his alleged injury.

The only evidence Plaintiff submits regarding the seriousness of his injury is that "[h]e has never observed a superficial injury produce the amount of blood officers observed that day." *See*

5

(Dkt. 43, at 1) This conclusory suggestion that the Officers should have known Plaintiff was suffering from a medical emergency due to the amount of blood they observed is purely speculative and wholly insufficient to create a dispute of material fact as to what the Defendant Officers observed and knew while on the scene. *See Drake v. Minn. Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

Plaintiff has not and cannot demonstrate that any of the Defendant Officers had any knowledge that he was bleeding and/or that he was injured at all. Officers Elfman and Serres believed Wendricks stated he suffered an injury to his genitals, although they did not observe any such injury. (DPFF 26-27, Pltfs Response) However, Plaintiff indicates that he never complained of injured genitalia and that he never answered any of the questions Officers asked him on scene. (*See id*; *see also* Dkt. 43, at 1) Accepting Plaintiff's statement that he did not answer any of the Officers' questions about his injures supports the fact the Defendant Officers could not and were not aware of Plaintiff's alleged injuries.

Plaintiff also maintains that he "believed he was dying" and that "officers were trying to kill him." *See* (Dkt. 43, p. 1) However, on this record, that theory is wholly speculative, and Plaintiff is not entitled to such an unsupported inference. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[I]t is well-settled that speculation may not be used to manufacture a genuine issue of fact." Unlike in some cases, where the officer's response to the detainee's invectives supports the inference that the officer was angry when he employed the taser, *cf. Orem v. Rephann*, 523 F.3d 442, 446–47 (4th Cir. 2008), there is simply no such evidence in this case.

Nothing requires the district court to disbelieve Defendants' proffered evidence simply because Plaintiff—without proof—asserts it is false. See *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (noting inferences "supported by only speculation or conjecture" do not create genuine issue of fact (citation omitted)). Indeed, the law requires just the opposite: Plaintiff cannot rest on "metaphysical doubt" or his interpretation that the Officers acted objectively unreasonable under the circumstances but must produce evidence so showing. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Plaintiff has not done so, thus his constitutional claims must fail.

### II. Plaintiff's Reliance on Department Polices Is Insufficient to Create a Dispute of Material Fact, as Plaintiff Has No Claim Relating To an Alleged Failure To Comply With Specific Police Policies.

Although absent from the Complaint and not addressed in the Court's November 2, 2020, Screening Order (Dkt. 8), Plaintiff now suggests—and devotes significant space in his Response materials—to the argument that the Defendant Officers did not follow Green Bay Police Department policies, and that this alleged failure is a basis for his constitutional claims. *See* (Dkt. 4-5; 6-7) Plaintiff's reliance on departmental policies to support his claims is futile.

It is well-established that an officer's alleged failure to follow department policies cannot be the basis for a constitutional claim. The Seventh Circuit has consistently held that, "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws, departmental regulations or police practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established. *Scott*, 346 F.3d at 761 ("'whether [the officer's] conduct was either good police practice or a violation of Illinois law' was immaterial to whether he violated the Fourth Amendment.").

Even if the Defendant Officers failed to follow police department polices, which they did not, Plaintiff cannot create an issue of material fact, as policy violations alone are inadequate to support a claim for violation of the Fourth or Fourteenth Amendment. This, coupled with the admissible facts of the Officers' conduct on the scene, further shows there was no violation of Plaintiff's constitutional rights.

### III. Plaintiff's Excessive Force Claim Must Be Dismissed.

Plaintiff's Response is a study in 20/20 hindsight conjecture, the kind which may not be allowed in a Fourth Amendment analysis. Plaintiff first admits that he was "suffering from an altered consciousness of excited delirium." (Dkt. 47, p. 5) Plaintiff then places blame on the Officers for not identifying that he was suffering from excited delirium or that his erratic behavior was because of the LSD, which he admitted to taking. (Dkt. 41, pp 5-6; *see also* DPFF 30, Pltfs Resp) In doing so, Plaintiff essentially concedes that that his behavior could have caused a reasonable officer concern. *See* (Dkt. 41-1, pp. 64 of 80 "persons suffering from excited delirium exhibit extreme agitation, violent irrational behavior.") Regardless, Plaintiff has failed to point to any legal authority that requires the Officers to treat an induvial who may be suffering from the effects of LSD, but still poses a threat differently in the context of uses of force. *Cf. Williams v. Indiana State Police Dept.*, 797 F.3d 468, 478-79 (7th Cir. 2015).

In this case, the continuum of force used is undisputed. *See* (Dkt. 31, Defs' Summary Judgment Brief pp. 7-8; *See also* Dkt. 41-1, Pltfs' Exs H-L). Thus, the focus is not necessarily what force was used, but whether it was reasonable under the circumstances. *Morfin v. City of E. Chicago*, 349 F.3d 989, 1004 (7th Cir. 2003). In seeking to understand the perspective of the officer on the scene, Courts consider: the information known to the officer at the time of the encounter; the duration of the encounter; the level of duress involved; "and the need to make split-second

8

decisions under intense, dangerous, uncertain, and rapidly changing circumstances." *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018). Finally, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 396–97.

Even if Plaintiff's behavior was caused by LSD, the Officers can only act based on the knowledge they posses, their experience, and observations. They cannot–nor does the law require—speculate into the motives or intentions of Plaintiff. Further, there is no legal obligation that the Officers respond differently even if the Officers knew why Plaintiff was acting in a volatile manner, and no guarantee that any different response to Plaintiff would have had a better result.

Plaintiff claims that the Officers "hog-tied" and tased him while he was incapacitated and bleeding, to suggest that he was not a threat to the Officers. (Dkt. 41, p. 4) This is simply false and there is absolutely no evidence in the record that demonstrates Plaintiff was "hog-tied." Plaintiff cannot rely on factually erroneous statements to defeat Defendants' summary judgment motion.

Based on all admissible evidence, the Court must conclude that the Officers' use of force was reasonable under the circumstances they faced during their encounter with Plaintiff. The Officers did not arrive at Plaintiff's apartment with an intention to harm him. They were ultimately faced with an uncooperative individual who exhibited dangerous behavior and who they perceived to be under the effects of illicit narcotics. As the Officers tried to assess the situation, Plaintiff became combative, requiring the Officers to use force to secure him. It is also undisputed that the force being used against Plaintiff was ineffective. (DPFF 42, 57, 61). The Officers perceived Plaintiff's behavior as dangerous. (DPFF 30-31) Plaintiff's actions made Officers fearful that he would attack them (DPFF 51, 58), so much so that Officer exhaustion became a factor and

9

additional back up was called. (DPFF 60, 63) Plaintiff's actions required countermeasures from five officers to secure him. (DPFF 64, 66-67)

Under these undisputed facts, it was reasonable for Officers to use force in a dangerous situation where Plaintiff was non-compliant, refused to comply with commands to be handcuffed, and continued to resist and fight with them. *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009)("Courts "give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations.").

In the absence of any evidence of specific wrongdoing, Plaintiff's excessive force claim is conjecture, and his Response fails to raise any material issue of fact for trial.

**IV.     Plaintiff's Deficient Medical Care Claims Must Be Dismissed.**

Plaintiff has made no relevant or logical argument or response to Defendants' argument that the Officers did not violate his rights under the Fourteenth Amendment. Plaintiff's Response is devoid of citation to any legal authority or to the factual record. (Dkt. 41, p. 4-5) The only "support" Plaintiff relies on is Green Bay Police Department policy, which he argues the Officers did not follow. *Id*. p. 5. However, as demonstrated above in Section II, Plaintiff pled no claim relating to a violation of any policy, nor does he name the municipal entity as a party. Even if he had, a violation of a police department police cannot be the basis for a constitutional claim. *Scott*, 346 F.3d at 760.

Without considering the irrelevant policy violation arguments, Plaintiff's response to Defendant's argument that they acted reasonable in responding to his medical needs is simply that: (1) he was bleeding, and the Officers should have known that he was injured; and (2) the Officers "waited 6 minutes of time to assess his injuries, call for rescue or provide aid." (Dkt. 41, pp. 4-5)

10

Case 2:20-cv-01189-PP   Filed 08/16/21   Page 10 of 16   Document 48

To survive summary judgement on his inadequate medical care claim, Plaintiff must demonstrate that the Defendant Officers were aware of his serious medical need and that they acted objectively unreasonable under the circumstances in terms of treating or assessing his serious medical need. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Negligence—even gross negligence—is insufficient to meet this standard. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Plaintiff's due process claim is meritless must fail for the following reasons.

First, Plaintiff has failed to put forth evidence to demonstrate that the Defendant Officers were knowingly inattentive to his alleged injury. Plaintiff was conscious and talking when the Officers first encountered him. (DPFF 25; Pltfs Resp) Officers observed blood smeared on walls leading up to the apartment, inside apartment 3 and on Plaintiff (DPFF 19-20; Pltfs Resp); however, none of the Officers knew that he was actively bleeding or where the blood was coming from. The Officers believed that Plaintiff appeared to be under the influence of narcotics and disassociated with reality (DPFF 22, 28), however they did not perceive that he was suffering from a life-threatening injury, nor did they observe any visible injury or wound. (DPFF 24, 79, 82-83)

Plaintiff does not and cannot create a genuine dispute regarding the Officers' observations and knowledge during their brief interactions with him on August 2, 2018. Plaintiff merely relies on his subjective belief that he was "clearly injured" and that the Officers "obviously knew he was in a medical emergency." *See* (DPFF 26-27; Pltfs Resp) Officers Serres attempted to determine whether Plaintiff was injured, however Plaintiff claims that "he never answered any of the officers' questions." *See id*. Even accepting Plaintiff's statement further supports that the Officers were not adequately put on notice of any injury he alleges to have received.

Second, even if the Officers were aware that Plaintiff was suffering from a serious injury on August 2, 2018, he cannot demonstrate that they did not promptly provide him medical

attention. Plaintiff concedes that Rescue was called, however suggests that a six-minute delay in contacting Rescue demonstrates that Officers acted unreasonably. *See* (Dkt. 41, pp. 4-5) Plaintiff cites no authority to support that a 6-minute (or any timeframe) delay in medical attention renders an officer's actions unreasonable. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015)(two-day delay in providing an pretrial detainee with pain medication is not enough, standing alone, to show a culpable mental state. The delay may or may not have been negligent, but it did not constitute deliberate indifference for purposes of the Due Process Clause of the Fourteenth Amendment.). Here, an ambulance was called promptly and was enroute at 5:23:58, less than three minutes from the time Officers arrived on scene. (DPFF 68; Pltfs Resp; *see also* Baynard Supp. Decl. ¶ 2, Ex. A)

Even if the Court considers that 6 minutes is an "unreasonable delay," summary judgment is still appropriate for Defendants because Plaintiff was responsible for his own delay in medical attention. *See Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007). Plaintiff presented a safety risk to the Officers, which prevented the Officers from safely assess any alleged injuries until they were able to secure him. (DPFF 84-85) At that point, there was no need or obligation for any of the Defendant Officers to provide additional medical attention as Plaintiff was already being treated by Rescue. (DPFF 69); *See Miranda v. Cty. of Lake*, 900 F.3d 335 (7th Cir. 2018)(When detainees are under the care of medical experts, non-medical jail staff may generally trust the professionals to provide appropriate medical attention.).

The fact that Plaintiff's dangerous behavior was the only cause for any delay in medical attention is further supported by the Aurora BayCare records which indicate that Plaintiff arrived in an altered state "screaming and flailing about," was "too much of a behavior risk to safely get near," and "prohibited medical staff from reviewing his symptoms." (DPFF 71-75)

Third, Plaintiff has failed to present verifying medical evidence that any delay in medical care caused some degree of harm. To survive summary judgement on his inadequate medical care claim, Plaintiff must present verifying medical evidence that the delay in medical care caused some degree of harm. *See Miranda*, 900 F.3d 335. Plaintiff has failed to do so and his subjective, non-medical opinion that "he very easily could have died" and that he "plans to see a physical therapist for his alleged shoulder injury" (Dkt. 41, p. 5) is insufficient to support his claims. *Cf. Wilson v. Hosey*, No. 09–C–7777, 2012 WL 957488, at *7 (N.D.Ill. Mar. 15, 2012)(granting summary judgment for defendant where plaintiff's only evidence that he needed medical treatment was his testimony, which was contradicted by testimony by plaintiff's doctor).

For these reasons, all deficient medical care claims alleged against Defendants should be dismissed as a matter of law.

### V. Plaintiff Has Failed to Dispute Defendants' Entitlement to Qualified Immunity.

Although qualified immunity is an affirmative defense, once raised the burden shifts to the non-moving party to defeat the defense by demonstrating that the undisputed facts establish a violation of "clearly established" right. *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014). A clearly established right cannot be shown with "high levels of generality." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). Instead, a plaintiff must offer "**controlling authority**" or "a robust consensus of cases of persuasive authority" barring such conduct as of the date of the incident. *Id*.

Plaintiff failed to identify a controlling precedent that "squarely governs the specific facts at issue" and therefore cannot dispute Defendants' entitlement to qualified immunity on his excessive force claim. See *Kisela v. Hughes*, 138 S. Ct. 1148, 1152-3 (2018). Instead, Plaintiff cites to a string of cases that are neither legally authoritative as none derive from the Seventh Circuit nor are they factually relevant. *See* (Dkt. 41 p. 5-6) Moreover, the cases Plaintiff relies on

13

all deal with individuals who had force employed against them after they were immobilized and no longer posed a safety threat. That is not the case here. Even the records from first responders and medical professionals at Aurora BayCare (which Plaintiff submits as exhibits) demonstrate that Plaintiff continued to pose a threat even after being transported from the scene. (DPFF 71-75; *see also* Dkt. 41-1, Ex. R)

Plaintiff further relies on his subjective opinion that he was suffering from a medical or mental health emergency to suggest the Officers should have acted different and thus, violated clearly established law. The Supreme Court has determined that an officer's failure to accommodate a subject's mental illness does not violate clearly established law. *City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613 (2015)(citations omitted). Plaintiff has not provided a robust consensus of persuasive and settled authority holding police officers' use of force objectively unreasonable under the circumstances facing the Officers in the present case.

Finally, all deficient medical care claims alleged against the Defendant Officers should also be dismissed on qualified immunity grounds. Here, Plaintiff cannot prove an underlying constitutional violation for the reasons explained above and all deficient medical care claims alleged against the Defendant Officers are therefore precluded under the first prong of qualified immunity. Even if an underlying constitutional violation can be shown, all deficient medical care claims alleged against the Defendant Officers should nevertheless be dismissed under the second prong of qualified immunity because Plaintiff cannot prove the deprivation of a clearly established right with the requisite level of specificity.

Defendants have addressed the issue of qualified immunity in their memorandum in support of motion for summary judgment. *See* (Dkt. 31, pp. 16-18) Plaintiff has not provided evidence or authority to undermine Defendants' legal and factual support that Anna Serres,

14

Case 2:20-cv-01189-PP   Filed 08/16/21   Page 14 of 16   Document 48

Rodney Reetz, Alexander Carlson, Lucy Elfman and Aaron Walker are entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment Claims.

### VI. Plaintiff's Claims May be Barred by *Heck v. Humphrey*.

On November 9, 2020, Plaintiff, as the result of a "no contest plea" essentially pled and was found guilty of Resisting or Obstructing an Officer in violation of Wisconsin Statutes 946.41(1), which provides that "whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor." Wis. Stat. § 946.41(1)(emphasis added); (DPFF 86-87). Plaintiff now alleges that the Officers used excessive force in effectuating his arrest. *See* (Dkt. 1. at 8) Plaintiff's version of the facts would necessarily imply the invalidity of his state court conviction for resisting law enforcement. See *Helman v. Duhaime*, 742 F.3d 760, 763 (7th Cir. 2014).

The Seventh Circuit has acknowledged that the *Heck* bar may spring back into existence if a plaintiff's allegations necessarily imply the invalidity of a conviction (even one based on a guilty plea), even if the allegations do not expressly challenge the underlying conviction. *See Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003). Accordingly, the Court should dismiss Plaintiff's excessive force claim because judgment in Plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence" and the "conviction or sentence . . . has not been . . . invalidated." *Heck v. Humphrey*, 512 U.S. 477, 486–87(1994).

### CONCLUSION

Based on the foregoing, the Court should grant Defendants' Motion for Summary Judgment and dismiss this action in its entirety with prejudice.

Dated at Wauwatosa, Wisconsin this \_\_\_\_ day of August, 2021.

        **GUNTA LAW OFFICES, S.C.**
        Attorneys for Defendants

        /s *Jasmyne M. Baynard*
        Gregg J. Gunta, WI Bar No. 1004322
        Ann C. Wirth, WI Bar No. 1002469
        Jasmyne M. Baynard, WI Bar No. 1099898
        Kyle R. Moore, WI Bar No. 1101745
        9898 W. Bluemound Road, Suite 2
        Wauwatosa, Wisconsin 53226
        Telephone: (414) 291-7979
        Facsimile: (414) 291-7960
        Emails: gjg@guntalaw.com
                acw@guntalaw.com
                jmb@guntalaw.com
                krm@guntalaw.com